UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RODOLFO MARTINEZ, JUAN MARTINEZ, and
MARIA MARTINEZ, on behalf of herself and her infant
daughter A.M.,

                        Plaintiffs,

                v.

THE COUNTY OF NASSAU, DET. ROBERT J.
LASHINSKY, LT. CHARLES C. DUNN, and
JOHN/JANE DOES #1-10, individually and in their
official capacities (the names John and Jane Doe being
fictitious, as the true names are presently unknown),

                        Defendants.
------------------------------------------------------------X

**COMPLAINT**

13-CV-____

**FEUERSTEIN, J.**

Jury Trial Demanded

      Plaintiffs RODOLFO MARTINEZ, JUAN MARTINEZ, and MARIA MARTINEZ on behalf of herself and her infant daughter A.M., by their attorneys, Reese Richman LLP, complaining of the defendants, respectfully allege as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiffs bring this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, for violations of their civil rights, as said rights are secured by the United States Constitution and the laws of the United States and of the State of New York.

### JURISDICTION, VENUE & JURY TRIAL

      2.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, and the First, Third, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

      3.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

1

4. Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

5. Plaintiffs respectfully demand a trial by jury on all issues and claims in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiffs RODOLFO MARTINEZ, JUAN MARTINEZ, MARIA MARTINEZ and A.M., an infant, (collectively "Martinez Family") are and were at all relevant times residents of the State of New York, County of Nassau, located in the Eastern District of New York.

7. Plaintiff RODOLFO MARTINEZ ("Rodolfo") is a twenty-three year old Latino male and high school graduate with no criminal history.

8. Plaintiff JUAN MARTINEZ ("Mr. Martinez") is a self-employed Latino male and landscaper in his mid-forties and the father of Plaintiffs Rodolfo Martinez and A.M.

9. Plaintiff MARIA MARTINEZ ("Mrs. Martinez") is a Latina female and homemaker in her mid-forties and the mother of Plaintiffs Rodolfo Martinez and A.M.

10. Plaintiff A.M. is a minor of pre-school age who is and was at all relevant times in the care and custody of her parents and natural guardians, Plaintiffs Juan and Maria Martinez; Plaintiff Maria Martinez brings this action on Plaintiff A.M.'s behalf.

11. Defendant COUNTY OF NASSAU ("County") was and is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York.

12. Defendant County maintains the Nassau County Police Department ("NCPD"), a duly organized department of the County authorized to perform all functions of a police department pursuant to the applicable provisions of New York State Criminal Procedure Law under the direction and supervision of Defendant County.

13. Defendants DET. ROBERT J. LASHINSKY, LT. CHARLES C. DUNN, and "JOHN/JANE DOES" #1-10, individually and in their official capacities (the names "John and Jane Doe" being fictitious, as the true names are presently unknown) were at all relevant times employed by Defendant County through the NCPD and acting according to their official duties and under the supervision of the NCPD.

14. Defendant County and its NCPD were at all relevant times responsible for the hiring, training, supervision, discipline, monitoring, retention and promotion of the officers, employees and agents of the NCPD.

15. Defendants were at all relevant times acting under color of state law and pursuant to the laws, statutes, rules, customs, usages, polices and/or practices of the State of New York and/or Nassau County.

16. Defendants were at all relevant times acting in the scope of their employment by Defendant County and in furtherance thereof.

## FACTS

17. On or about January 3, 2011, at approximately 1:30 a.m., Plaintiffs, the Martinez Family, were lawfully present in their two-story, four bedroom home on Chase Street in Hempstead, New York. Carlos C. ("Carlos"), who resided in a downstairs bedroom he had rented from Plaintiffs Mr. and Mrs. Martinez for several years, was also present in the home at this time.

18. Plaintiffs' Chase Street home is and was at all relevant times owned by Plaintiffs Juan Martinez and Maria Martinez.

19. On or about January 3, 2011, at or around 1:30 a.m., Plaintiff Maria Martinez noticed two individuals in street clothes (later identified as Defendant NCPD Detective Robert J. Lashinsky ("Det. Lashinsky") and Defendant NCPD Officer "John Doe" #1 ("P.O. Doe #1"), approaching the front door of Plaintiffs' home; Plaintiff Mrs. Martinez perceived Defendants Det. Lashinsky and P.O. Doe #1 trying to open the front door.

20. Plaintiff Mrs. Martinez, particularly concerned about her family's safety in the wake of a recent neighborhood burglary, alerted her husband—Plaintiff Mr. Martinez—that someone was at the door, and directed her son, Plaintiff Rodolfo, to find out what was going on.

21. Plaintiff Rodolfo proceeded to go downstairs, but by the time he reached the first floor, Defendants Det. Lashinksy and P.O. Doe #1 had already entered Plaintiffs' home and had closed the front door behind them.

22. Defendants Det. Lashinsky and P.O. Doe #1 had no warrant, privilege or excuse to enter Planitiffs' home, and at no time did Plaintiffs or anyone else present in the home or with any authority, apparent or otherwise, consent or grant permission to Defendants to enter Plaintiffs' home.

23. Plaintiff Rodolfo engaged Defendants Det. Lashinksky and P.O. Doe #1; Defendants very rapidly displayed objects that appeared to be badges in such a manner that Plaintiff Rodolfo was essentially unable to see them.

4

24. Defendants then asked Plaintiff Rodolfo "Where's Carlos?" or words to similar effect. Plaintiff Rodolfo indicated to Defendants which downstairs bedroom was occupied by Carlos and protested their intrusion, noting that his parents owned the house.

25. Defendants Det. Lashinsky and P.O. Doe #1 ignored Plaintiff Rodolfo's protestation and first opened the door to the other downstairs bedroom, which was vacant, and looked inside; then, still without any permission whatsoever, Defendants entered the room occupied by Carlos.

26. Rather than conducting their purported business openly and expeditiously, Defendants closed the door to Carlos's room, locked it behind them and refused to come out.

27. Plaintiffs Mr. and Mrs. Martinez came downstairs. Plaintiffs Mr. Martinez and Rodolfo knocked on the door of the bedroom occupied by Carlos and asked Defendants Lashinsky and Doe #1 to verify their identities, which Defendants refused to do. Instead, Defendants threatened Plaintiff Mr. Martinez with arrest if he continued to knock on the door. While Defendants were still locked inside the bedroom, Plaintiffs requested through the door that Defendants agree to provide their names and badge numbers upon exiting the bedroom, and Defendants again refused.

28. While Defendants were still quartered and operating from inside of the locked downstairs bedroom in Plaintiffs' home, Plaintiff Mrs. Martinez called the police, but her call was prematurely terminated one or more times. Plaintiff Mrs. Martinez ultimately gave the phone to Plaintiff Rodolfo, who spoke to a presumed police official; Plaintiff Rodolfo informed the official that two individuals purporting to be police entered their family home, unannounced and without sufficiently identifying themselves,

and locked themselves into a bedroom to conduct their operations secretly from within Plaintiffs' home.

29. Defendants Lashinsky and P.O. Doe #1 eventually emerged from Carlos's bedroom, at which point Plaintiff Rodolfo, standing in his family's hallway, asked again for their names and badge numbers. Defendants once again refused.

30. Without any justification or excuse to do so, Defendants violently pushed Plaintiff Rodolfo to the ground; however, Plaintiff Rodolfo stood up and did not move. At this point, without any justification, privilege or excuse to do so, Defendant Lashinsky and/or Defendant P.O. Doe #1 grabbed and seized Plaintiff Rodolfo and made statements to the effect that Plaintiff Rodolfo was to be arrested.

31. In view of the increasing aggression of the intruding Defendants, who steadfastly refused to identify themselves and were becoming violent, Plaintiffs were forced to change their behavior and did not feel safe expressing their protestations against Defendants' actions.

32. Plaintiff Mrs. Martinez, fearful for her family's safety, went to retrieve a camera to document what was taking place.

33. Defendants also recklessly, gratuitously and unnecessarily pushed Plaintiff Mr. Martinez, who was holding his daughter, Plaintiff A.M. at the time, and threatened to arrest Plaintiff Mr. Martinez although there was no probable cause to do so, causing Mr. Martinez to change his behavior.

34. Without any probable cause or privilege to do so, Defendants took Plaintiff Rodolfo into custody and, although it was very cold winter weather with several inches of snow on the ground, dragged him outside of his own house without socks,

shoes or proper attire. At no time did Plaintiff Rodolfo resist Defendants' unlawful arrest.

35. In spite of his lack of resistance, Defendants continued to roughly grab Plaintiff Rodolfo about his body, held and pushed him down, bent him over the trunk of their vehicle, placed handcuffs on him, and thereafter violently and sadistically and without any legitimate purpose or justification, hit him on the head with what appeared to be a metal flashlight, all in the presence of his mother, Plaintiff Mrs. Martinez.

36. Defendants gratuitously and unnecessarily pushed Plaintiff Mr. Martinez again as he stood outside of the Martinez home and while he was still holding Plaintiff A.M., causing her to become further visibly distressed.

37. Defendants further took measures to ensure that Plaintiff Mrs. Martinez could not document their excessive force and other illegal acts against her family by deliberately and intentionally flashing a light in her face as she attempted to take photographs of the incident.

38. Defendants thereafter transported Plaintiff Rodolfo to a police facility believed to be the NCPD 3rd Precinct. Prior to escorting Plaintiff into the precinct, Defendants intentionally opened each and every door on the transport vehicle and sadistically, with no legitimate purpose or excuse, left Plaintiff Rodolfo sitting outside in the open car with his bare skin exposed to the freezing conditions for a protracted period of time while they ridiculed him and laughed about the fact that he had no socks.

39. Plaintiff was held at the police facility until approximately 6:00 a.m., at which time he was transported by bus to another facility and placed in a holding cell.

40. Without any probable cause to do so, Defendants Det. Lashinsky, Lieutenant Charles C. Dunn ("Lt. Dunn"), and others initiated criminal proceedings against Plaintiff Rodolfo in the Nassau First District Court, Case No. 2011NA000119; Upon information and belief, Defendants Lashinsky and Dunn further signed a criminal instrument falsely alleging that Plaintiff Rodolfo had grabbed one of the officers by the arm in an attempt to pull the officer away from Carlos C., and charging Plaintiff Rodolfo with violating New York State Penal Law § 195.05, Obstructing Governmental Administration in the Second Degree.

41. Plaintiff Rodolfo was thereafter released at approximately 12 noon on January 3, 2011.

42. Following his release from custody, Plaintiff Rodolfo was required to appear in court approximately 11 times to defend himself against the false and baseless charges manufactured, initiated and pursued by Defendants.

43. The criminal case against Plaintiff Rodolfo was fully dismissed and terminated in his favor by the Nassau First District Court in the latter part of 2012.

### FIRST CLAIM FOR RELIEF: DEPRIVATION OF FEDERAL CIVIL RIGHTS

44. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

46. All of the aforementioned acts deprived Plaintiffs of the rights, protections, privileges and immunities guaranteed to citizens of the United States by the

First, Third, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, such violations being actionable under 42 U.S.C. § 1983.

47. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

48. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of Defendant County and the NCPD, all under the supervision of ranking officers of said department.

49. Defendants, collectively and individually, while acting under color of state law, engaged in conduct substantially motivated by, consistent with and reflective of a custom, usage, practice, procedure or rule of Defendant County, which is prohibited by the Constitution of the United States.

50. By the aforementioned actions, Defendants have deprived Plaintiffs of their rights under the First, Third, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and Defendants are liable for such violations pursuant to 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF: CONSPIRACY UNDER 42 U.S.C. § 1983

51. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52. Defendants, acting under color of state law, agreed with one or more private parties to unlawfully gain access to and enter Plaintiffs' home without a warrant,

consent, privilege or excuse, in violation of Plaintiffs' clearly established constitutional rights.

54. Defendants and the private co-conspirator(s), who had neither actual nor apparent authority to distribute a key to Plaintiff's home or grant access thereto, met on or about January 2, 2011, and agreed to inflict constitutional injury on Plaintiffs by unlawfully using said key to gain entry to Plaintiffs' home without privilege, permission or excuse in violation of Plaintiffs' clearly established constitutional rights.

54. Defendants took overt acts in furtherance of this agreement by improperly obtaining a key to Plaintiff's home, traveling to the home unannounced during the very early morning hours on January 3, 2011, and using said key to unlawfully enter and search Plaintiffs' home without privilege, permission or excuse, resulting in violations of Plaintiffs' clearly established constitutional rights.

### THIRD CLAIM FOR RELIEF: CONSPIRACY UNDER 42 U.S.C. § 1985

55. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56. Defendants conspired with one or more private actors to interfere with Plaintiffs civil rights by agreeing to obtain unlawful access to Plaintiffs' private home without privilege, permission or excuse.

57. Although the Constitution and laws of the United States and the State of New York guarantee security and privacy in one's home, require that home searches by law enforcement be supported by a judicial warrant, actual permission or exigent circumstances, and expressly prohibit the quartering of soldiers in private residences in peacetime, Defendants entered into the conspiracy for the express purpose of denying the

Martinez Family, individually and as members of a class of similarly situated Latino/a individuals and families, the equal protection of the laws of the United States and the State of New York as enjoyed by other homeowners in such circumstances.

58.  Defendants engaged in one or more overt acts in furtherance of their conspiracy to interfere with Plaintiffs' civil rights inasmuch as they improperly obtained a key to Plaintiffs' home, travelled to Plaintiffs' home unannounced in the very early morning hours of January 3, 2011, used the key to unlawfully enter and search Plaintiff's home, and unlawfully locked themselves into a bedroom therein which they unlawfully appropriated for their own objectives.

59.  Defendants' conspiratorial acts resulted in various injuries to each Plaintiff's person and/or property, including, *inter alia*, physical assault and battery, trespass, emotional distress, shock and fright, interference with the quiet use and enjoyment of their home, and violations of their rights to privacy, equal protection and due process, and their rights to be free of excessive force, false arrest, malicious prosecution, and malicious abuse of process.

### FOURTH CLAIM FOR RELIEF: FALSE ARREST

60.  Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.  As a result of Defendants' aforementioned conduct, Plaintiff Roberto Martinez was subjected to an illegal, improper and false arrest by Defendants, forcibly taken into custody, falsely imprisoned, detained, confined, incarcerated and prosecuted by the Defendants in criminal proceedings, all in the absence of any probable cause, privilege, excuse or consent whatsoever.

11

62. Plaintiff Roberto was at all relevant times aware of his confinement and at no time did he consent thereto in any way.

63. During the time of his false arrest and imprisonment, Plaintiff Roberto's liberty was restricted for approximately 10 to 11 hours, he was put in fear for his safety and subjected to handcuffing and other physical force and restraints, all without probable cause.

64. As a result of being falsely arrested, Plaintiff Roberto Martinez was subjected to loss of liberty, humiliation, ridicule and disgrace before his neighbors and others.

### FIFTH CLAIM FOR RELIEF: EXCESSIVE FORCE

65. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. Defendants' subjected Plaintiffs Rodolfo Martinez, Juan Martinez and infant Plaintiff A.M. to an excessive, unreasonable and gratuitous level of force in violation of their constitutional rights.

67. Defendants' aforementioned conduct resulted in a violation of Plaintiffs' constitutional right to be free from excessive force and Plaintiffs sustained physical and emotional injuries.

### SIXTH CLAIM FOR RELIEF UNLAWFUL ENTRY AND SEARCH

68. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

12

69. Defendants unlawfully entered Plaintiffs' home without consent, privilege or excuse, in violation of their right to be secure in their home.

70. Defendants unlawfully searched Plaintiffs' home, wherein Plaintiffs had a reasonable expectation of privacy, without consent, privilege or excuse, in violation of their right to privacy.

71. As a result of Defendants' aforementioned conduct, Plaintiffs' constitutional rights to be free from unlawful entry and unlawful search were violated, and they were subjected to trespass, invasion of privacy, interference with the use and enjoyment of their home, shock, fear, humiliation, embarrassment and significant disruption to their lives.

72. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73. Defendants initiated, commenced and continued a prosecution against Plaintiff Rodolfo Martinez, in the absence of probable cause and with actual malice, by providing false and/or misleading information to the prosecutor that resulted in criminal charges against him.

74. Plaintiff Rodolfo was caused to appear in Court on numerous occasions to defend the baseless criminal charges against him until they were terminated entirely in his favor.

75. As a result of Defendants' unlawful actions, Plaintiff Rodolfo experienced a violation of his right to be free from malicious prosecution and a corresponding deprivation of liberty.

## SEVENTH CLAIM FOR RELIEF:
## MALICIOUS ABUSE OF PROCESS

76. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77. Defendants issued criminal process against Plaintiff Rodolfo Martinez by initiating and continuing criminal proceedings without probable cause and by executing accusatory instruments containing false and/or misleading information.

78. Defendants caused Plaintiff Rodolfo Martinez to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, namely to cover up their unlawful entry and search and other abuses of authority and acts of misconduct, thereby violating Plaintiff Rodolfo's right to be free from malicious abuse of process.

## EIGHTH CLAIM FOR RELIEF
## FIRST AMENDMENT RETALIATION

79. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. Plaintiffs' interest in, *inter alia*, protesting unlawful incursions into their home, requesting the identities of law enforcement officers unlawfully entering and searching their home, knocking on an interior door in their own home, and ignoring and/or refusing to obey unlawful orders is protected by the First Amendment.

81. Defendants retaliated against Plaintiffs' expression of protected speech by, *inter alia*, threatening to arrest Plaintiffs, using excessive force against Plaintiffs, and falsely arresting and maliciously abusing process against Plaintiff Rodolfo Martinez.

82. Defendants' retaliatory actions changed Plaintiffs' behavior and resulted in chilling of their exercise of protected speech.

83. As a result of Defendants' aforementioned conduct, Plaintiffs were subjected to, *inter alia*, curtailment and suppression of their protected speech in violation of their constitutional rights.

### NINTH CLAIM FOR RELIEF: MUNICIPAL LIABILITY

84. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85. Defendants unlawfully entered and searched Plaintiffs' home, subjected Plaintiffs to excessive force, retaliated against Plaintiffs for exercise of their right to free speech, and falsely arrested and maliciously abused process against Plaintiff Roberto Martinez despite a complete lack of cause against him, notwithstanding their knowledge that such actions would violate Plaintiffs' clearly established constitutional rights.

86. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

87. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of Defendant County and the NCPD, all under the supervision of ranking officers of said department.

88. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant County and the NCPD included, but were not limited to, initiating and continuing criminal proceedings without evidence of criminal activity.

15

89. The foregoing customs, policies, usages, practices, procedures and rules of Defendant County and the NCPD constituted a deliberate indifference to the safety, well-being and constitutional rights of Mr. Simmons.

90. The foregoing customs, policies, usages, practices, procedures and rules of Defendant County and the NCPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as alleged herein.

91. The foregoing customs, policies, usages, practices, procedures and rules of Defendant County and the NCPD were the moving force behind the constitutional violation suffered by Plaintiffs as alleged herein.

92. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiffs' constitutional rights.

93. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Plaintiffs' constitutional rights.

94. Defendant County, as policymaker in the training and supervision of the individual defendants, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their rights to be free of unreasonable search and seizure, excessive force, suppression of free speech, deprivations of property and liberty, and denial of due process of law in violation of the First, Third, Fourth, and Fourteenth Amendments to the Constitution of the United States, as said violations are actionable pursuant to 42 U.S.C. § 1983 and the Constitution and laws of the State of New York.

95. All of the foregoing acts by Defendants deprived Plaintiffs of federally protected rights, including, but not limited to, the right:

   a. Not to be deprived of property without due process of law;

   b. To be free from unlawful search;

   c. To be free from unlawful arrest and imprisonment;

   d. To be free from excessive, unreasonable and gratuitous force and from the unlawful failure to intervene therein;

   e. To engage in protected free speech;

   f. To be free from malicious abuse of process;

   g. To receive equal protection under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and pray for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS.

2. Punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.

DATED:   New York, New York
         March 4, 2013

                                    Respectfully submitted,

                                    _____
                                    Kim E. Richman, Esq.
                                    **REESE RICHMAN LLP**
                                    875 Avenue of the Americas, 18th Floor
                                    New York, NY 10001
                                    (212) 643-0500 (telephone)
                                    (212) 253-4272 (facsimile)

                                    *Attorneys for Plaintiffs*